**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                        :
**VLADIMIR TSASTSIN,**
                                        :        **18 Civ. 5975 (LAK)**
                        **Petitioner,**          **11 Cr. 878 (LAK)**
                                        :
            **- v. -**
                                        :
**UNITED STATES OF AMERICA,**
                                        :
                        **Respondent.**
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


### THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO VLADIMIR TSASTSIN'S PETITION PURSUANT TO 28 U.S.C. § 2255


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
*Attorney for the United States*
*of America*


SARAH LAI
Assistant United States Attorney
    *– Of Counsel–*

## **TABLE OF CONTENTS**

Preliminary Statement ....................................................................................................1

The Relevant Facts ..........................................................................................................2
   A.  The Offense Conduct .............................................................................2
   B.  The Plea Agreement................................................................................3
   C.  The Presentence Report ..........................................................................3
   D.  The Guilty Pleas.....................................................................................4
   E.  The Petitioner's Sentencing ...................................................................5
   F.  The Bureau of Prison's Computation of the Petitioner's Sentence
      and the Petitioner's Unsuccessful Administrative Appeal.......................9
   G.  The Petitioner's Prior Motion Pursuant to Rule 36
      of the Federal Rule of Criminal Procedure ..............................................9

Applicable Law ...............................................................................................................10
   A.  General Legal Principles Governing Claims of Ineffective Assistance
      of Counsel .............................................................................................10
   B.  Waiver...................................................................................................11
   C.  The Statute of Limitations ....................................................................12

Discussion .......................................................................................................................12
   A.  Claims 1 to 5, 7 and 8 Should Be Dismissed Because They Seek
      § 2241 Relief ........................................................................................12
   B.  The Petitioner's § 2255 Motion Is Wholly Time-Barred.........................13
   C.  The Petitioner's Claims Fail For Other Reasons ....................................15
      1.  Plea Counsel Was Not Ineffective Simply Because the Petitioner
         Did Not Receive Double Prior Custody Credit (Claim 1) ...................15
      2.  The Petitioner Has Waived Claims 2 to 5, 7 and 8............................16
      3.  The Petitioner's Forfeiture Claim (Claim 6) Is Not Cognizable
         On Collateral Review.........................................................................17
      4.  Sentencing Counsel Did Not Render Ineffective Assistance By
         Failing to File A Notice of Appeal (Claim 9) ....................................19

Conclusion ......................................................................................................................20

# **TABLE OF AUTHORITIES**

**Cases**

*Campusano v. United States*, 442 F.3d 770 (2d Cir.2006) ....................................... 19

*Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) ....................................... 10

*Fiumara v. United States*, 727 F.2d 209 (2d Cir. 1984) ....................................... 18

*Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) .................................. 10

*Hill v. United States*, 368 U.S. 424 (1962) ............................................... 12-13

*Honeycutt v. United States*, 137 S. Ct. 1626 (2017) ....................................... 17, 18

*Lewis v. United States*, No. 16 Cr. 212 (LAK), 2017 WL 6398629 (Nov. 20, 2017) ............. 11

*Meyers v. United States*, 1 F. Supp. 2d 318 (S.D.N.Y. 1998) .................................. 14

*Paula v. United States*, No. 14 Civ. 2344 (PAC), 2014 WL 6609426 (Oct. 22, 2014) ............. 11

*Rivera v. United States*, No. 16 Civ. 9909 (GBD),
    2018 WL 2081913 (S.D.N.Y. Apr. 24, 2018) ......................................... 11

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ................................................ 13

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) ........................................10, 11, 16

*United States v. Acevedo*, 229 F.3d 350, 356 (2d Cir. 2000) .................................. 10

*United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) .................................... 11

*United States v. Djelevic*, 161 F.3d 104 (2d Cir.1998) ....................................... 17

*United States v. Gabin*, No. 00-1814, 2001 WL 1631217 (2d Cir. Dec. 17, 2001) ................. 17

*United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000) ................................... 11-12

*United States v. Lee*, 523 F.3d 104 (2d Cir. 2008) .......................................... 11

*United States v. Riggi*, 649 F.3d 143 (2d Cir. 2011) ........................................ 11

*United States v. Rutigliano*, 887 F.3d 98 (2d Cir. 2018) ..................................... 18-19

*United States v. Timmreck*, 441 U.S. 780 (1979) ........................................... 18

*Valona v. United States*, 138 F.3d 693 (7th Cir. 1998) ...................................... 12

**Statutes**

18 U.S.C. § 3585 ....................................................................... 15

28 U.S.C. § 2255(f)(1), (4) .......................................................... 12, 13

**Other Authorities**

U.S.S.G. § 5G1.3(b) ................................................................... 16

**Treatises**

3 Charles Alan Wright, *Federal Practice & Procedure (Criminal)* § 591 ...................... 13

**PRELIMINARY STATEMENT**

Vladimir Tsastsin, an Estonian national (the "petitioner") who was extradited to the

United States, has moved to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255,

more than two years and one month after the entry of the judgment of conviction ("JNC").  The

petitioner argues that the attorneys who represented him at his plea proceeding, Jeremy

Schneider, David Stern and Lucos Anderson (collectively, "Plea Counsel"), rendered ineffective

assistance because they provided him with wrong information as to prior custody credit for the

time he was detained in Estonia (Claim 1).

He further asserts that the lawyers who represented him for purposes of sentencing,

Arkady Bukh and Charles Kaser (together, "Sentencing Counsel"), were also ineffective for a

host of reasons.  Most of those claims relate to the sentence imposed:  The petitioner alleges that

Sentencing Counsel's representation was defective for failing to point out that the parties had

purportedly agreed that the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") in

effect as of November 1, 2015, should apply to his Guidelines calculation (Claim 2); failing to

protest the prosecution's alleged breach of his plea agreement with the Government (the "Plea

Agreement") regarding the offense level (Claim 3), the petitioner's leadership role (Claim 4) and

the loss amount (Claim 5); and failing to seek the application of U.S.S.G. § 5G1.3(b) (Claim 7)

and correct errors in the Presentence Investigation Report ("Presentence Report" or "PSR")

(Claim 8).  In addition, the petitioner claims that Sentencing Counsel rendered ineffective

assistance by failing to challenge the prosecution's alleged breach of the Plea Agreement by

changing the forfeiture aspects of the sentence (Claim 6) or to file a Notice of Appeal (Claim 9).

For the reasons discussed below, with the exception of Claims 6 and 9, the motion should

be dismissed without a hearing because it is in actuality a petition pursuant to 28 U.S.C. § 2241.

A § 2241 petition must be brought before the District Court of the District where the defendant is

in custody, not before the sentencing Court.  Even if the Court were to disagree that the proper
vehicle for Claims 1 to 5, 7 and 8 is a § 2241 petition, those claims, along with Claims 6 and 9,
should be denied because the motion is time-barred.  Finally, if the Court were to decide that the
§ 2255 motion should not be denied on either of these grounds, it should still be denied in its
entirety because the claims have been waived, are not cognizable in a habeas petition, and/or fail
on the merits.

## THE RELEVANT FACTS

**A.**     **The Offense Conduct**

From 2007 to 2011, the petitioner participated in a scheme to infect millions of
computers worldwide with malicious software designed to block their ability to obtain antivirus
and operating systems security updates and to hijack computer traffic to websites in which the
petitioner and his coconspirators had a financial interest ("click fraud").  As a result of the
scheme, the petitioner and his coconspirators earned millions of dollars from unsuspecting
Internet advertisers.

On November 1, 2011, the petitioner was charged in a superseding Indictment with
various computer intrusion and fraud charges (the "Indictment").  On November 8, 2011, the
petitioner was arrested in Estonia on Estonian money laundering charges which alleged that he
laundered the proceeds of the click fraud scheme.  He was held in custody pursuant to those
charges until December 20, 2013.  On December 21, 2013, he was deemed by the Estonian
authorities to be held pursuant to the U.S. provisional arrest warrant.  However, his extradition
was deferred until after he was convicted in Estonia of the Estonian money laundering charges.
On October 31, 2014, the petitioner was extradited to the Southern District of New York.

**B.      The Plea Agreement**

After the petitioner's conviction was affirmed on appeal in Estonia, he entered into a plea agreement in this case in which he stipulated to a Guidelines calculation that yielded a range of 78 to 97 months' imprisonment (the "Stipulated Guidelines Range").  *See* Plea Agreement dated June 30, 2015 ("Plea Agmt"), attached hereto as Exhibit A, at 2-3.  In the Plea Agreement, the petitioner further agreed that he

> will not . . . bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 78 to 97 months' imprisonment[.]

Plea Agmt, at 5.  In addition, the parties agreed that "[t]his [waiver] provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  *Id.*  Further, the parties agreed that

> this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case.

*Id.*

**C.      The Presentence Report**

Prior to sentencing, the Probation Office prepared a Presentence Report.  The Guidelines calculation in the Presentence Report was the same as in the Plea Agreement with one exception: the Probation Office included a 4-level leadership role enhancement, pursuant to U.S.S.G. § 3B1.1(a).

**D.     The Guilty Pleas**

On July 8, 2015, the petitioner pleaded guilty before Magistrate Judge Michael H.

Dolinger to Counts One and Two of the Indictment.  At the start of the plea proceeding,

Magistrate Judge Dolinger placed the petitioner under oath, ensured that the petitioner was

physically and mentally competent to enter guilty pleas, and confirmed that he understood his

legal rights and was satisfied with his attorney's representation.  *See* Transcript of Plea

Proceedings, dated July 8, 2015 ("Plea Tr."), attached hereto as Exhibit C, at 3-9.  Magistrate

Judge Dolinger then carefully allocated the petitioner on the Plea Agreement:

> THE COURT:  Did you sign this plea agreement?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Before you signed it, did you discuss it with your attorney?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Did he explain to you all of its terms and conditions?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Now, I note that as part of the plea agreement, there is an analysis of how the sentencing guidelines may affect the sentence in your case and that analysis ends with the prediction that the guidelines range for a prison term will be 78 to 97 months. Are you aware of that fact?
>
> THE DEFENDANT:  Yes.

(Plea Tr. at 10-11).

The Court also specifically allocated the petitioner as to the waiver provision in the Plea

Agreement:

> THE COURT:  Do you also understand that as part of this plea agreement if the sentence that you receive is not longer than 97 months, you're giving up your right to complain about that sentence either on appeal to the Court of Appeals or by application to Judge Kaplan; do you understand that?

       THE DEFENDANT:  I understand.

(Plea Tr. at 11).

       In addition, Magistrate Judge Dolinger ensured that no promises were made outside the plea agreement regarding any potential sentence:

> THE COURT:  Apart from what is contained in this letter [the Plea Agreement], have any promises been made to you as to the sentence you will receive in this case?
>
> THE DEFENDANT:  No.

(Plea Tr. at 9-10).

       On July 23, 2015, this Court accepted the petitioner's guilty pleas.  *See* Order Accepting Plea dated July 23, 2015 (ECF Document 135).  On April 20, 2016, the Court ordered the forfeiture in the amount of $2.5 million.  *See* Consent Preliminary Order of Forfeiture/ Money Judgment, dated April 20, 2016 (ECF Document 151).

## E.      The Petitioner's Sentencing

       Prior to sentencing, the Government informed the Court and the defense that the petitioner was deemed to have been in U.S. custody since December 21, 2013.  *See* Government's Supplemental Sentencing Submission, dated July 21, 2015 (ECF Document 125). That date – December 21, 2013 – was actually specified in the decision of the Estonian appellate court, dated June 26, 2014.[1]  The Government also explained that the time that the petitioner was held in Estonian custody pursuant to the U.S. provisional arrest warrant (*i.e.,* beginning on December 21, 2013) was not credited to Tsastsin's Estonian money laundering sentence, and therefore may be credited to his U.S. sentence.  *See* Government's Sentencing Memorandum, dated April 21, 2016 (ECF Document 154), at 6.  The period from November 8, 2011, to

---

[1] A copy of the relevant portion of the Estonian appellate decision and an English translation will be provided on request.

December 20, 2013, was applied to the petitioner's Estonian money laundering sentence, pursuant to the decision of the Estonian appellate court. Thus, the petitioner was on notice prior to sentencing that only the period from December 21, 2013 onwards could be credited to his U.S. sentence.

The sentencing proceeding was held on April 26, 2016. Between the entry of the petitioner's guilty pleas and the sentencing proceeding, the United States Sentencing Commission revised the fraud Guideline (U.S.S.G. § 2B1.1). At the start of the sentencing proceeding, the Court had a colloquy with the parties regarding the difference between the Stipulated Guidelines Range in the Plea Agreement, the Probation Office's application of the old Guidelines, and the defense's position that the new Guidelines, which were more favorable to the defense, should apply to the petitioner. *See* Transcript of Sentencing Proceeding dated April 26, 2016 ("Sent. Tr."), attached hereto as Exhibit D, at 3-5. As part of that colloquy, the Court determined that although the Probation Office and the Plea Agreement employed different Guidelines calculations, both ultimately arrived at the same total offense level of 28:

> THE COURT: So the long and the short of all this is that the guideline offense level is 28, both as stipulated and as calculated under the revised guidelines, and the guideline range is 78 to 97 months under both. They are now both consistent. Does everyone agree to that?
>
> THE PROSECUTION: The outcome, yes. How we get there is different, but the outcome is the same because probation has added four points for leadership role, which the government is not seeking.

(Sent. Tr. at 5). That discussion concluded as follows:

> THE COURT: But look –
>
> MR. KASER: I know.

6

> THE COURT:  – you made a deal.  And it was entirely foreseeable when you made the deal and stipulated to a guideline range that the guidelines could change.
>
> MR. KASER:  Correct.
>
> THE COURT:  Your deal had no saving clause that gave you effectively kind of an analogy to a most favored nations clause.  You made your deal and you've got to live with your deal.
>
> MR. KASER:  Right. Although it was the purview of the change in law. But I do agree this was a deal knowing that there could be a change that could benefit or to his detriment also.
>
> THE COURT: Okay.
>
> MR. KASER:  But just reiterating that they are guidelines, so I would just ask that that be taken into account when the ultimate sentence is handed down.  But you're correct.
>
> THE COURT:  The guideline range is 78 to 97; correct?
>
> MR. KASER:  Correct.
>
> *   *   *
>
> THE COURT:  . . . The bottom line here is that I find both on the basis of the stipulation and on the basis of the presentence report that the offense level is 28 and that the guideline range is 78 to 97 months.  Anybody disagree?  Going once, going twice, sold.  We're done with that.

(Sent. Tr. at 6-8).

Later in the proceeding, after noting that certain co-defendants had admitted to higher

loss amounts, the Court questioned the $2.5 million loss amount in the Plea Agreement and the

petitioner's role in the offense:

> THE COURT: Let me ask you a question.  As I understand it, the PSR says that this defendant is responsible for a loss amount of two and-a-half million dollars, but that [a co-defendant's] comparable figure is 14 million.  My understanding was that this defendant was the ringleader. Is that wrong?

7

> THE PROSECUTION:  He was, yes. No, it's not wrong, your
> Honor.

(Sent. Tr. at 14).  After the Government briefly explained the reasons for the stipulations as to

loss amount and role in the Plea Agreement, the Court asked:

> THE COURT:  So am I correct in concluding that under
> conventional principles as set out in the guidelines manual, and
> putting aside whatever negotiation that led to the plea agreement,
> the government's position would be that the loss amount in this
> fellow's case would be more probably 14 million than two and-a-
> half million, but for reasons satisfactory to the government, you
> agreed to two and-a-half million; is that about right?
>
> THE PROSECUTION:  Yes.

(Sent. Tr. at 15).

After hearing additional argument from the parties regarding the application of the

sentencing factors under 18 U.S.C. § 3553 and from the petitioner, the Court imposed a sentence

of 60 months on each of Counts One and Two, with 27 months of the term of imprisonment on

Count Two to be served consecutively with the term imposed on Count One, and 33 months of

the term of imprisonment on Count Two to be served concurrently with the term imposed on

Count One, for an aggregate term of imprisonment of 87 months.  (Sent. Tr. at 16).  The Court

further explained:

> I want to be clear that the sentence I have imposed has made
> allowance for the relative severity of the prison conditions in
> Estonia than the U.S. with respect to that portion of the time the
> defendant has already served in Estonia solely on account of the
> U.S. sentence.

(Sent. Tr. at 19).

The Court also ordered, on consent, that certain electronic equipment which were

instrumentalities of the crimes of conviction be forfeited to the United States.  *See* Consent Order

of Forfeiture dated April 26, 2016 (ECF Document 158).

**F.     The Bureau of Prison's Computation of the Petitioner's Sentence and the Petitioner's Unsuccessful Administrative Appeal**

The Bureau of Prisons ("BOP") computed the petitioner's sentence a couple of times, as explained by the BOP Central Office:

> On May 19, 2016, the Bureau of Prisons prepared a sentence computation based on the 87-month term of imprisonment commencing the sentence on April 26, 2016, the date of imposition. Prior custody credit was applied from December 21, 2013, the first date held on the U.S. provisional warrant through April 25, 2016, the date before the sentence commenced [the "Original Computation"].  On August 16, 2016, the sentence computation was updated to include foreign jail credit for time held in Estonian custody from November 8, 2011, thru December 20, 2013 [the "Erroneous Computation"].
>
> On December 14, 2017, the Bureau discovered that previously received information [namely, that the petitioner had been acquitted of his Estonian money laundering charges], which lead to the application of foreign jail credit, was erroneous, and therefore, the credit was removed.  Documentation from the Office of the Prosecutor General, Estonia, verified that time in custody from November 8, 2011, thru December 20, 2013, was already applied to the Estonian sentence, and only the period from December 21, 2013, should be applied to the U.S. sentence.

Administrative Remedy No. 934852-A2 Response, dated June 27, 2018, attached hereto as Exhibit B.  Notably, during the approximate three-month period between BOP's Original Computation and its Erroneous Computation, the petitioner did not seek administrative or collateral review.  With the BOP Central Office's decision, the petitioner exhausted his administrative remedies.

**G.     The Petitioner's Prior Motion Pursuant to Rule 36 of the Federal Rule of Criminal Procedure**

While his administrative appeal was still pending, on March 6, 2018, the petitioner filed a motion, pursuant to Rule 36 of the Federal Rules of Criminal Procedure, "to correct a clerical

error in the way that BOP calculat[ed] petitioner's sentence." (ECF Document 172). Rule 36 authorizes a court "to correct a clerical error in the judgment . . . or correct an error in the record arising from oversight or omission." The gravamen of the petitioner's Rule 36 motion was, however, that BOP should not have rescinded prior custody credit for the period from November 8, 2011, to December 20, 2013. The Court denied that motion on two grounds. First, the petitioner had failed to exhaust administrative remedies available to him. Second, there was no error in the judgment and, therefore, the Court lacked jurisdiction to provide the relief sought. (ECF Document 178).

On June 28, 2018, the petitioner filed the instant motion.

## APPLICABLE LAW

### A.    General Legal Principles Governing Claims of Ineffective Assistance of Counsel

To obtain relief from a conviction under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (citations omitted); *see also Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996). To prevail on a claim of ineffective assistance of counsel in particular, a defendant must surmount two significant hurdles. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must overcome the "strong presumption" that counsel's conduct was reasonable and show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688-89. Second, he must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94; *see also United States v. Acevedo*, 229 F.3d 350, 356 (2d Cir.

2000); *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000). Only if both elements of the test are satisfied can a reviewing court conclude that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

**B.      Waiver**

Courts in this Circuit have consistently upheld waivers of the right to appeal and to collaterally challenge a sentence in plea agreements, provided the agreement was executed knowingly and voluntarily. *See, e.g., United States v. Riggi*, 649 F.3d 143, 150 & n.1 (2d Cir. 2011) (enforcing waiver of right to challenge a Guidelines sentence substantially similar to the one in Tsastsin's Plea Agreement); *Lewis v. United States*, No. 16 Cr. 212 (LAK), 2017 WL 6398629 (Nov. 20, 2017) (holding that collateral challenge to a term of imprisonment of 100 months, which was within the relevant Guidelines range, was procedurally barred by waiver provision in plea agreement); *Paula v. United States*, No. 14 Civ. 2344 (PAC), 2014 WL 6609426, at *2 (Oct. 22, 2014) (knowing and voluntary waiver barred habeas petition). Waivers of the right to seek direct or collateral review are enforceable despite subsequent changes in the law. *See, e.g., Rivera v. United States*, No. 16 Civ. 9909 (GBD), 2018 WL 2081913, at *1 (S.D.N.Y. Apr. 24, 2018) (denying habeas petition based on waiver in plea agreement because "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements") (citing *United States v. Lee*, 523 F.3d 104, 107 (2d Cir. 2008)).

Waivers are presumptively enforceable except in a few circumstances. *See United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) (noting that waivers are not enforceable "when the waiver was not made knowingly, voluntarily, and competently . . . , when the sentence was imposed based on constitutionally impermissible factors . . . , when the government

11

breached the plea agreement . . . , or when the sentencing court failed to enunciate any rationale for the defendant's sentence" (internal citations, alterations, and quotation marks omitted).

**C.     The Statute of Limitations**

The statute of limitations for filing a § 2255 petition is one year from the latest of the date on which the judgment of conviction becomes final or the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f)(1), (4).

**DISCUSSION**

For the reasons discussed below, the petitioner's claims are all without merit, and his § 2255 motion should be denied without a hearing.

**A.     Claims 1 to 5, 7 and 8 Should Be Dismissed Because They Seek § 2241 Relief**

To the extent the petitioner's motion seeks a reduction in sentence, it should be denied because it is actually a request for sentencing computation relief cloaked in constitutional grievances.  His sole complaint against his Plea Counsel is that they allegedly misinformed him that he would receive prior custody credit toward the U.S. sentence starting from November 8, 2011 (the date of arrest), instead of from December 21, 2013 (the date he was first held pursuant to the U.S. provisional arrest warrant) (Claim 1).  Similarly, with two exceptions (Claims 6 and 9), his complaints against his Sentencing Counsel focus on their failure to challenge the Guidelines calculations in order to arrive at a lower Guidelines range, and presumably a lower sentence.  Those claims all invite the Court to undo BOP's sentence computation through other means.  As such, they should be treated as a petition pursuant to 28 U.S.C. § 2241.  *See, e.g., Valona v. United States,* 138 F.3d 693, 694 (7th Cir. 1998) ("A motion seeking relief on grounds concerning the execution but not the validity of the conviction and sentence . . . may not be brought under § 2255 and therefore falls into the domain of § 2241[.]"); *see also Hill v. United*

12

*States*, 368 U.S. 424, 428 (1962) (Section 2255 applies to non-jurisdictional claims based on a federal statute or rule only if the claim alleges a "fundamental defect which inherently results in a complete miscarriage of justice."); 3 Charles Alan Wright, *Federal Practice & Procedure (Criminal)* § 591, at 425-26 (2d ed. 1982) (habeas corpus petitions "may be used only by those who are not within the scope of § 2255, such as . . . one who does not challenge his conviction or his sentence but claims he is being held after expiration of his sentence.").

A § 2241 petition must be brought in the District where the petitioner is incarcerated.  As the Supreme Court has instructed,

> [w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.

*Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).  In this case, the petitioner is incarcerated in the Moshannon Valley Correctional Institution in Philipsburg, Pennsylvania, which is located in the Middle District of Pennsylvania.  Therefore, Claims 1 through 5, 7 and 8 should be dismissed for lack of jurisdiction.

**B.      The Petitioner's § 2255 Motion Is Wholly Time-Barred**

If the Court were to decide that Claims 1 to 5, 7 and 8 should be accepted at face value, rather than treated as a § 2241 petition in disguise, they should still be dismissed because they are time-barred.  Similarly, the remaining claims – Claims 6 and 9 – are also time-barred.  In this case, judgment was entered on May 4, 2016.  Judgment became final on May 18, 2016, the deadline for filing a notice of appeal.  Thus, the one-year limitation period for filing the instant motion expired on May 17, 2017.  *See* 28 U.S.C. § 2255(f)(1), (4).  The petitioner did not file the instant motion until June 28, 2018, even though the facts on which Claims 1 to 8 are predicated were known to (or could have been discovered through the exercise of due diligence by) the

13

petitioner within the one-year limitation.  Those facts included the amount of prior custody credit

that was eligible to be applied to the petitioner's U.S. sentence, his Counsel's conduct before and

during the plea and sentencing proceedings, the Government's responses to the Court's questions

at the sentencing proceeding which supposedly violated the Plea Agreement, the forfeiture

orders, and Sentencing Counsel's failure to file a notice of appeal.  Because the petitioner did not

timely file the instant motion until more than a year past the limitation period, his motion must

be dismissed as time-barred.  *See, e.g., Meyers v. United States,* 1 F. Supp. 2d 318, 318

(S.D.N.Y. 1998) (holding that § 2255 motion alleging ineffective assistance due to counsel's

failure to file notice of appeal was time-barred because it was filed after the expiration of the

limitation period).

The petitioner contends that the one-year limitation period should be calculated not from

the date that the judgment became final, but from on or about December 14, 2017, the date that

BOP corrected the mistake in its Erroneous Computation.  In effect, the petitioner is claiming

that he could not have known that his Counsel's representation was defective until he learned

that BOP had reverted to the Original Computation.  His attempt to reset the clock should be

rejected.  The only event post-dating the limitation period was BOP's recomputation.  As

discussed above, sentence computations can only be challenged through a § 2241 petition in the

Middle District of Pennsylvania, assuming the petitioner has not waived that right.

In any event, the record shows that the petitioner knew, or should have known, from the

Estonian appellate court's decision, the Government's sentencing submissions, and BOP's

Original Computation that the time from November 8, 2011, to December 20, 2013, would be

applied to his Estonian sentence and therefore could not be credited to his U.S. sentence.  It is

noteworthy that the petitioner did not appeal (administratively or otherwise) the Original

Computation during the three-month period before it was erroneously changed in his favor.  The Government submits that the petitioner did not initially challenge the Original Computation because, contrary to his present claim of surprise, he knew that the Original Computation was correct.  It was only after the petitioner lost the benefit of double credit for the period from November 8, 2011, to December 20, 2013, shortly before he thought he would be released, that he filed the Rule 36 motion, and then the instant § 2255 motion.  That sequence of events shows that the claim of ineffective assistance is pretextual; the petitioner is clearly challenging the BOP's sentence computation, not the quality of the legal representation he received.  Accordingly, the § 2255 motion should be denied.

**C.      The Petitioner's Claims Fail For Other Reasons**

Even if the Court were to find that the § 2255 motion is the proper vehicle for seeking collateral review and that the motion is not time-barred, it should still be denied in its entirety for the reasons discussed below.

**1.      Plea Counsel Was Not Ineffective Simply Because the Petitioner Did Not Receive Double Prior Custody Credit (Claim 1)**

The petitioner alleges that his Plea Counsel was ineffective because they led him to believe that he would receive prior custody credit toward his U.S. sentence from November 8, 2011 onwards.  His current allegation is belied by his sworn statement during the plea proceeding that, apart what was in the Plea Agreement, no one had made any promises to him as to what sentence he would receive.  (Plea Tr. at 9-10).  He points to an email exchange between his Plea Counsel and the Government as proof that he was promised full credit toward his U.S. sentence.  However, as the Government noted in the email correspondence, there can be no double credit for prior jail time.  *See* Tsatsin Mot, Exh. A; *see* 18 U.S.C. § 3585 (defendant shall be given credit for prior jail time "that has not been credited against another sentence").  Because

15

the Estonian authorities have credited the period from November 8, 2011, to December 20, 2013, to the petitioner's Estonian sentence, he is not entitled to have that time credited to his U.S. sentence.  Indeed, as discussed above, the application of that time to his Estonian sentence was expressly spelled out in the decision of the Estonian appellate court, dated June 26, 2014, two years before he was sentenced by this Court.

Equally important, the petitioner has never sought to withdraw his guilty plea and has never claimed that he would not have pleaded guilty – and thereby risk a Guidelines calculation based on a much higher loss amount and a leadership role enhancement – if he had known that only a portion of his time in Estonian custody would be applied to the U.S. sentence.  Thus, the petitioner cannot demonstrate a reasonable probability that, but for Plea Counsel's performance, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694. Accordingly, Claim 1 fails.

### 2.      The Petitioner Has Waived Claims 2 through 5, 7 and 8

The petitioner claims that Sentencing Counsel rendered ineffective assistance with respect to the calculation of the applicable Guidelines sentencing range.  Specifically, he alleges that Sentencing Counsel were ineffective because they failed to oppose the offense level that the Court accepted (Claim 3), to request the application of U.S.S.G. § 5G1.3(b) (Claim 7), and to object to the Guidelines calculation in the Presentence Report (Claim 8).  He also asserts that Sentencing Counsel were ineffective because they did not point out that the Government had breached the plea agreement by holding the petitioner to the stipulated offense level in the plea agreement (Claim 2), and responding truthfully to the Court's questions regarding the petitioner's role (Claim 4) and the loss amount (Claim 5).  Each of these arguments should be rejected because the petitioner has waived the right to seek collateral review of any sentence that is equal to or less than 97 months' imprisonment.  (Plea Agmt, at 5).  As the Second Circuit has

16

instructed, when a challenge to a sentence is barred by the plain language of the waiver provision

of a plea agreement, courts should not countenance a petitioner's effort to "challeng[e] the

correctness of his sentence under the Sentencing Guidelines" by "dressing up his claim as a

violation of the Sixth Amendment[.]"  *United States v. Gabin*, No. 00-1814, 2001 WL 1631217

(2d Cir. Dec. 17, 2001) (citing *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir.1998)

(internal quotation marks omitted)).  The Second Circuit further explained:

> [I]f we were to allow a claim of ineffective assistance of counsel at
> sentencing as a means of circumventing plain language in a waiver
> agreement, the waiver of appeal provision would be rendered
> meaningless.

*Id.*

Waivers may be invalidated if a defendant received ineffective assistance of counsel in

connection with the plea or if the prosecution breaches the plea agreement.  As discussed in

subsection (1) above, Plea Counsel did not render ineffective assistance.  To the extent the

petitioner seeks to void the waiver as to Claims 2, 4 and 5 by positing them as breached of the

Plea Agreement by the prosecution, that attempt should be rejected.  The Second Circuit's

rationale in *Gabin* and *Djelevic* applies with equal force to allegations of prosecutorial

misconduct as a means of circumventing a waiver.  In any event, as the sentencing transcript

makes clear, the Government did not breach the Plea Agreement.  Specifically, the prosecution

did not advocate a higher loss amount, a higher offense level or a leadership role enhancement.

For all of these reasons, Claims 2 through 5, 7 and 8 should be dismissed.

### 3.    The Petitioner's Forfeiture Claim (Claim 6) Is Not Cognizable On Collateral Review

The petitioner contends that the Government breached the Plea Agreement by seizing

more than the $2.5 million.  Because the petitioner relies on *Honeycutt v. United States*, 137 S.

Ct. 1626 (2017), the Government construes his argument to be that the Government is impermissibly holding him jointly and severally liable for forfeiture attributable to his co-defendants.  In addition, he complains that the Government seized computer equipment and related online infrastructure that were not covered by the Plea Agreement.  (Claim 6, Pet. at 23-24).  This claim should be rejected.

In *Honeycutt*, the Supreme Court clarified that the forfeiture provisions in 21 U.S.C. § 853 do not impose joint and several liability on each member of a conspiracy.  Rather, the government may seek forfeiture only of "any property constituting, or derived from, any proceeds" that the defendant "obtained, directly or indirectly" from the offense giving rise to the forfeiture.  137 S. Ct. at 1632-34.  Thus, a claim based on *Honeycutt* is statutory, not constitutional, in nature.  Courts have consistently held that non-constitutional violations of federal law are not cognizable on collateral review.  *See, e.g., United States v. Timmreck*, 441 U.S. 780, 783-84 (1979) (claim that district court violated Fed. R. Crim P. 11 by failing to advise defendant of mandatory parole term before accepting guilty plea not subject to collateral review); *Fiumara v. United States*, 727 F.2d 209, 213 (2d Cir. 1984) (claim that wiretap order did not comply with statutory requirement not subject to collateral review).

The forfeiture claim must also be rejected because "the monetary components of criminal sentences, such as fines and restitution orders, generally do not restrict liberty so severely as to satisfy the [jurisdictional] custody requirement of § 2255."  *United States v. Rutigliano*, 887 F.3d 98, 104-05 (2d Cir. 2018) (citing *Kaminski v. United States*, 339 F.3d 72, 86) (2d Cir. 2003)).  That is true even when, as here, the petitioner challenges both custodial and non-custodial aspects of his sentence in the same habeas petition.  *Rutigliano*, 887 F.3d at 105 ("A party cannot avoid this conclusion by challenging both the custodial and noncustodial parts of his sentence in

18

the same § 2255 motion.").  Thus, the Court lacks jurisdiction to collaterally review the forfeiture claim.

In any event, the petitioner has not identified any accounts from which an aggregate of more than $2.5 million was seized.  Nor can he.  The total balance in the financial accounts seized to date is less than $2.2 million, and none of those accounts were held in the petitioner's name.  As to the computers and other electronic equipment, the petitioner and his Sentencing Counsel executed a Consent Order of Forfeiture, dated April 26, 2016, which specifically listed 82 electronic items.  *See* Consent Order of Forfeiture, dated April 26, 2016 (ECF Document 158).  Any challenge to that Order should have been made on direct appeal.

### 4.   Sentencing Counsel Did Not Render Ineffective Assistance By Failing to File a Notice of Appeal (Claim 9)

Finally, the petitioner claims that Sentencing Counsel provided ineffective assistance by ignoring his instructions to file a notice of appeal.  That claim should also be rejected.  The Second Circuit has held that when counsel fails to file a notice of appeal upon the request of his client, the Court should "presume prejudice . . . and the defendant will be entitled to a direct appeal without any showing on collateral review that his appeal will likely have merit." *Campusano v. United States*, 442 F.3d 770, 771 (2d Cir.2006) (defendant had signed a waiver of appeal).  However, in this case, Sentencing Counsel have submitted a joint sworn declaration (the "Declaration") refuting the petitioner's allegations, which were not made under penalty of perjury.  As set forth in the Declaration, the petitioner had initially requested that Counsel appeal the judgment of conviction, but withdrew those instructions after further discussions with Counsel within the 14-day period for filing a notice of appeal.  *See* Declaration of Arkady Bukh, Esq. and Charles W. Kaser, Esq., dated October 18, 2018, attached hereto as Exhibit E, ¶¶ 2, 8. Sentencing Counsel swore that those communications covered the enforceability of the waiver

provision in the Plea Agreement, the low likelihood that an appeal would be successful, and the risk that the appeal would constitute a breach of the Plea Aagreement that could cause the petitioner to lose the substantial benefits to him of that Agreement.  *Id.* ¶¶ 3-5.  Further, Sentencing Counsel swore that they explained to the petitioner that changes in the law that occur after entry of a guilty plea pursuant to a plea agreement do not invalidate the waiver provision. *Id.* ¶ 6.  Sentencing Counsel stated that the petitioner withdrew his request to file a notice of appeal after receiving this advice.  Thus, even if Claim 9 were not time-barred – which it is – it should be dismissed on the merits.

## **CONCLUSION**

For the reasons discussed above, the Government respectfully submits that petitioner Vladimir Tsastsin's motion pursuant to 28 U.S.C. § 2255 be denied in its entirety, without a hearing.

Dated:  New York, New York
          December 11, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

by:        /Sarah Lai/
       Sarah Lai
       Assistant United States Attorney
       (212) 637-1944