UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VLADIMIR TSASTSIN,                                    :

                Petitioner,                      :

                                      :        <u>REPORT & RECOMMENDATION</u>

                                      :
          -v.-                                              18 Civ. 5975 (LAK) (GWG)
                                        :

UNITED STATES OF AMERICA,                       :

                Respondent.                    :
-------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Petitioner Vladimir Tsastsin, currently an inmate at Moshannon Valley Correctional

Center in Philipsburg, Pennsylvania, brings this pro se petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2255 after having pled guilty to one count of conspiracy to commit wire

fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to commit computer intrusion

in violation of 18 U.S.C. § 1030(b).[1]  Tsastsin, who was sentenced principally to a term of

imprisonment of 87 months, argues that his attorneys rendered ineffective assistance at his plea

proceeding and at sentencing.  For the following reasons, Tsastsin's petition should be denied.

I. <u>BACKGROUND</u>

      A. <u>Indictment and Arrest</u>

       Tsastsin was charged in a superseding indictment with multiple computer intrusion and

---

     [1]  <u>See</u> Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody, filed June 28, 2018 (Docket # 1) ("Pet."); Memorandum of Law in
Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed
June 28, 2018 (Docket # 2) ("Pet'r Mem."); The Government's Memorandum of Law in
Opposition to Vladimir Tsastsin's Petition Pursuant to 28 U.S.C. § 2255, filed Feb. 12, 2019
(Docket # 10) (filed Dec. 11, 2018, Docket # 187 in 11 Cr. 878) ("Resp't Opp."); Petitioner's
Reply to the Government's and Former Counsels' Response to Motion for Relief Pursuant to 28
U.S.C. § 2255, filed Feb. 6, 2019 (Docket # 188 in 11 Cr. 878) ("Pet'r Reply"); Declaration of
Vladimir Tsastsin, filed Mar. 20, 2019 (Docket # 190 in 11 Cr. 878).

fraud crimes on November 1, 2011.  Sealed Indictment, filed Nov. 1, 2011 (Docket # 4 in 11 Cr. 878) ("Indictment").  As relevant here, Count One of the Indictment charged that from 2007 to October 2011, Tsastsin and his co-conspirators participated in a scheme to infect at least four million computers in over 100 countries with malicious software, or "malware."  Id. ¶ 1.  This "malware" helped the defendants generate illicit revenue through companies they controlled that "masqueraded as legitimate participants" in internet advertising.  Id. ¶ 2.  Through those companies and the use of the "malware," the defendants conducted a scheme through which, for example, "they would be paid based upon the number of times [an] Internet user[] 'clicked' on links for certain advertisements."  Id.  Count Two of the Indictment charged that Tsastsin and his co-conspirators, in connection with the scheme described in Count One, conspired to commit computer intrusion in violation of 18 U.S.C. § 1030(b).  Id. ¶¶ 37-41.

Tsastsin was arrested in Estonia on November 8, 2011, on Estonian money laundering and computer fraud charges.  Pet'r Mem. ¶¶ 1-2[2]; Resp't Opp. at 2; Administrative Remedy No. 934852-A2, Part B - Response, dated June 27, 2018 (annexed as Ex. B to Resp't Opp.) ("BOP Appeal Decision"), at 1.  Tsastsin was held in custody in Estonia pursuant to those charges until December 20, 2013, and on December 21, 2013, he was deemed to be held pursuant to a provisional U.S. arrest warrant.  Resp't Opp. at 2; BOP Appeal Decision at 1.  At some point thereafter, Tsastsin was convicted of the Estonian charges, one of which was affirmed on appeal.  See Pet'r Mem. ¶¶ 6, 10; Resp't Opp. at 2; BOP Appeal Decision at 1.  On October 31, 2014, Tsastsin was extradited to the United States.  Pet'r Mem. ¶ 7; Resp't Opp. at 2; BOP Appeal Decision at 1.

---

[2]  The paragraphs we refer to in Tsastsin's memorandum correspond to the numbered paragraphs listed in the "Facts" section of his brief, which begins on page four.

B. <u>Plea Agreement, Presentence Report, and Guilty Plea</u>

In June 2015, Tsastsin entered into a plea agreement with the Office of the United States Attorney for the Southern District of New York.  <u>See</u> Letter from Sarah Y. Lai, dated June 30, 2015 (annexed as Ex. A to Resp't Opp.) ("Plea Agreement").  As part of the Plea Agreement, Tsastsin agreed to plead guilty to Counts One and Two of the Indictment, and stipulated to a calculation pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") of 78 to 97 months' imprisonment.  <u>Id.</u> at 1-3.  As part of the Plea Agreement, Tsastsin agreed that he would not

> file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 78 to 97 months' imprisonment[.]

<u>Id.</u> at 5.  Tsastsin also agreed that the above provision would be "binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein," and that the provision would apply "regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case."  <u>Id.</u> It was "expressly agreed," however, that Tsastsin reserved his right "to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise."  <u>Id.</u>

On July 8, 2015, Tsastsin appeared before United States Magistrate Judge Michael H. Dolinger for a guilty plea.  <u>See</u> Transcript of Proceedings held July 8, 2015 (annexed as Ex. C to Resp't Opp.) ("Plea Transcript").  Tsastsin was placed under oath.  In the course of the allocution, Judge Dolinger ensured that Tsastsin was competent to enter an informed guilty plea, and confirmed that Tsastsin understood his rights and that he was satisfied with his attorney's

3

representation of him.  See Plea Transcript at 3-5.  After Tsastsin indicated he wished to enter a

plea of guilty to the two charges, Judge Dolinger questioned Tsastsin about the Plea Agreement

and some of its provisions and consequences:

> THE COURT: Did you sign this plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Before you signed it, did you discuss it with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did he explain to you all of its terms and conditions?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, I note that as part of the plea agreement, there is an analysis of how the sentencing guidelines may affect the sentence in your case and that analysis ends with the prediction that the guidelines range for a prison term will be 78 to 97 months.  Are you aware of that fact?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that when it comes time to sentence you, Judge Kaplan will be required to take the sentencing guidelines into consideration but will not necessarily be required to apply them directly to your case?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Do you also understand that even if Judge Kaplan applies the guidelines in your case, he will not be bound by the analysis of the guidelines found in this plea agreement and if he does his own analysis of the guidelines, he may arrive at an entirely different sentencing guideline range; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you also understand that even if Judge Kaplan agrees that the guideline range is 78 to 97 months, he may choose in appropriate circumstances to impose a prison term that is either longer than the maximum of that range, that is longer than 97 months, or shorter than the minimum of that range, that is less than 78 months?

THE DEFENDANT: I understand.

THE COURT: Do you also understand that as part of this plea agreement if the sentence that you receive is not longer than 97 months, you're giving up your right to complain about that sentence either on appeal to the Court of Appeals or by application to Judge Kaplan; do you understand that?

THE DEFENDANT: I understand.

Id. at 10-12.  Tsastsin also confirmed that no promises had been made to him as to the sentence he would receive, see id. at 9-10, and that his plea was being made voluntarily and of his own free will, id. at 13.  Tsastsin then briefly described in his own words what made him guilty of Counts One and Two, id. at 14-15, and Judge Dolinger, having been "satisfied that [Tsastsin's] pleas [were] voluntary and that there [was] a factual basis for them," therefore "recommend[ed] that . . . Judge Kaplan accept the proffered pleas," id. at 16.

On July 23, 2015, Judge Kaplan accepted Tsastsin's guilty pleas.  Order Accepting Plea Allocution, filed August 11, 2015 (Docket # 135 in 11 Cr. 878).

In August 2015, the Probation Office conducted a presentence report ("PSR") interview with Tsastsin, and filed a PSR indicating a Guidelines calculation in accordance with the range stated in the Plea Agreement, except that the PSR added a four-level leadership role enhancement, for a total offense level of 32.  Resp't Opp. at 3; Pet'r Mem. ¶ 13.

C.  Sentencing

Tsastsin was sentenced by Judge Kaplan on April 26, 2016.  See Transcript of Proceedings held Apr. 26, 2016 (annexed as Ex. D to Resp't Opp.) ("Sentencing Transcript"). Before that date, but afer Tsastsin's guilty plea was accepted, the Sentencing Guidelines were revised.  See Resp't Opp. at 6; Pet'r Mem. ¶ 16.  At sentencing, Judge Kaplan engaged in a discussion with the prosecution and defense as to how that revision might affect any Guidelines

5

range as stated in Tsastsin's Plea Agreement.  See Sentencing Transcript at 4-8.  The

Government expressed its view that the enhancement for determining whether the offense

resulted in "substantial financial hardship" to a victim under section 2B1.1(b)(2) of the

Guidelines should be two under the revised Guidelines as opposed to six under the prior version

of the Guidelines.  Id. at 4.  Thus, the Government explained, the offense level recommended by

the PSR should be reduced by a total of four, resulting in a final offense level of 28, which also

corresponded to the Guidelines range in the Plea Agreement.  Id. at 4-5.  That discussion

continued between the Court, the Government (Assistant U.S. Attorney Sarah Lai), and one of

Tsastsin's sentencing attorneys, Charles Kaser:

> THE COURT: So the long and the short of all this is that the guideline offense
> level is 28, both as stipulated and as calculated under the revised guidelines, and
> the guideline range is 78 to 97 months under both.  They are now both consistent.
> Does everyone agree to that?  Ms. Lai?
>
> MS. LAI: The outcome, yes.  How we get there is different, but the outcome is
> the same because probation has added four points for leadership role, which the
> government is not seeking.
>
> MR. KASER: And so by that argument, I would then say that it shouldn't even be
> 28; it should be four points even lower than that because no one is seeking the
> leadership role.  That's just my argument.
>
> THE COURT: But look --
>
> MR. KASER: I know.
>
> THE COURT: -- you made a deal.  And it was entirely foreseeable when you
> made the deal and stipulated to a guideline range that the guidelines could change.
>
> MR. KASER: Correct.
>
> THE COURT: Your deal had no saving clause that gave you effectively kind of
> an analogy to a most favored nations clause.  You made your deal and you've got
> to live with your deal.
>
> MR. KASER: Right.  Although it was the purview of the change in law.  But I do

agree this was a deal knowing that there could be a change that could benefit or to his detriment also.

THE COURT: Okay.

MR. KASER: But just reiterating that they are guidelines, so I would just ask that that be taken into account when the ultimate sentence is handed down.  But you're correct.

THE COURT: The guideline range is 78 to 97; correct?

MR. KASER: Correct.

. . .

THE COURT: . . . .  The bottom line here is that I find both on the basis of the stipulation and on the basis of the presentence report that the offense level is 28 and that the guideline range is 78 to 97 months.  Anybody disagree?  Going once, going twice, sold.  We're done with that.

Id. at 5-8.

Taking into account the sentencing factors under 18 U.S.C. § 3553, as well as additional

argument from the parties regarding those factors, Judge Kaplan imposed a sentence of

imprisonment of

60 months on each of Counts One and Two, with 27 months of the term of imprisonment on Count Two to be served consecutively with the term imposed on Count One, and 33 months of the term of imprisonment on Count Two to be served concurrently with the term imposed on Count One, for an aggregate term of imprisonment of 87 months.

Sentencing Transcript at 16.  After imposing the sentence, Judge Kaplan explained: "I want to be

clear that the sentence I have imposed has made allowance for the relative severity of prison

conditions in Estonia than the U.S. with respect to that portion of the time the defendant has

already served in Estonia solely on account of the U.S. sentence."  Id. at 18-19.

D.  Administrative Appeal and Rule 36 Motion

Judgment was entered on May 4, 2016, and Tsastsin was committed to Moshannon

Valley Correctional Center in Philipsburg, Pennsylvania on May 20, 2016.  See Judgment, filed

May 4, 2016 (Docket # 159 in 11 Cr. 878); Text Entry, filed Sept. 5, 2017 (Docket # 171 in 11

Cr. 878).

　　　Tsastsin's sentence was then prepared by BOP in accordance with the sentence imposed

on April 26, 2016.  See Resp't Opp. at 9; BOP Appeal Decision at 1.  In June 2016, Tsastsin

submitted a request to receive foreign jail credit and have his sentence re-calculated.  BOP

Appeal Decision at 1; see Pet'r Mem. ¶ 19.  In August 2016, BOP updated his sentence "to

include foreign jail credit for time held in Estonian custody from November 8, 2011, thru

December 20, 2013."  BOP Appeal Decision at 1; see Pet'r Mem. ¶ 19.  However, on December

14, 2017, BOP "discovered that previously received information, which lead to the application of

foreign jail credit, was erroneous, and therefore, the credit was removed."  BOP Appeal Decision

at 1.  BOP explained that "[d]ocumentation from the Office of the Prosecutor General, Estonia,

verified that time in custody from November 8, 2011, thru December 20, 2013, was already

applied to the Estonian sentence, and only the period from December 21, 2013, should be

applied to the U.S. sentence."  Id.  Tsastsin administratively appealed what he termed BOP's

"roll[] back" of his foreign jail credit, Pet'r Mem. ¶ 20, maintaining that his time spent in

Estonian custody from November 8, 2011, through December 20, 2013, in fact should be

credited to his federal sentence, id. ¶ 19.  In its June 27, 2018, decision denying the

administrative appeal, BOP explained why the granting of foreign jail credit for November 8,

2011, through December 20, 2013, was erroneous.  See BOP Appeal Decision.  The decision

explained that under 18 U.S.C. § 3585(b) and BOP's Program Statement 5880.28, Sentence

Computation Manual (CCCA of 1984), because Tsastsin's time spent in Estonian custody from

November 8, 2011, through December 20, 2013, was already applied to his Estonian sentence,

he was not entitled to credit for that time on his U.S. sentence.  BOP Appeal Decision at 1-2.

The appeal decision stated that "[p]ursuant to USSG § SG l.3(b), it is the court['s] responsibility

to adjust the sentence if it determines the Estonia offense is relevant conduct to the instant

[federal] offense.  The Bureau has no authority to adjust a term or apply credit in accordance

with this guideline."  BOP Appeal Decision at 2.

On March 6, 2018, while his administrative appeal was pending, Tsastsin filed an

"Emergency Petition" pursuant to Rule 36 of the Federal Rules of Criminal Procedure to correct

a "clerical error" in BOP's calculation of his sentence.  See Petition to Expedite Petitioner's

Motion Pursuant to Rule 36 of the Federal Rules of Criminal Procedure, filed Mar. 6, 2018

(Docket # 172 in 11 Cr. 878).  The Government filed an opposition letter and Tsastsin filed a

reply.  On May 17, 2018, Judge Kaplan issued an order, which (1) concluded that "there was no

clerical error in the judgment," and (2) stated that "the relief Mr. Tsastsin[] seeks properly is

sought through the administrative appeals process and, upon its exhaustion, through a motion for

a writ of habeas corpus pursuant to 28 U.S.C. § 2441."  Order, filed May 17, 2018 (Docket # 178

in 11 Cr. 878).  On June 28, 2018, Tsastsin filed this habeas corpus petition brought under 28

U.S.C. § 2255 (not section 2241).  See Pet. (Docket # 180 in 11 Cr. 878).

## II.  GOVERNING STANDARDS OF LAW

### A.  Petitions Under 28 U.S.C. § 2255

Section 2255(a) of Title 28 of the United States Code provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

9

Relief under this statute is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (citation and internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted).

Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A live testimonial hearing is required to adjudicate a § 2255 motion, however, only in circumstances not present here. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (district court's review of the papers submitted with respect to the petition constituted a sufficient evidentiary hearing). In Chang, the Second Circuit noted that "'there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.'" 250 F.3d at 85 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see 28 U.S.C. § 2255(c) ("A court may entertain and determine [a section 2255] motion without requiring the production of the prisoner at the hearing."). Thus, Chang held that, depending on the allegations in the petition, a "court may use methods under [§] 2255 to expand the record without conducting a full-blown testimonial hearing." Chang, 250 F.3d at 86 (citing Blackledge v. Allison, 431 U.S. 63, 81-82 (1977)). Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'" Id. (quoting Raines v. United States, 423 F.2d 526, 529-30 (4th Cir.

1970)); accord Ferranti v. United States, 480 F. App'x 634, 638 (2d Cir. 2012) (summary order)

("Although [o]ur precedent disapproves of summary dismissal of petitions where factual issues

exist[ ], . . . it permits a 'middle road' of deciding disputed facts on the basis of written

submissions.") (alterations in original) (citation and internal quotation marks omitted); Wang v.

United States, 458 F. App'x 44, 45 (2d Cir. 2012) (summary order) (affirming dismissal of

Section 2255 petition where "the District Court . . . conduct[ed] an evidentiary hearing . . .

limited to the sworn, written submissions of [petitioner], his former counsel, and the

interpreters").

Tsastsin requests such an evidentiary hearing.  See Pet'r Mem. at 33-34.  However, a

hearing is unnecessary for the reasons stated herein.

B.  Procedural Default

The Second Circuit has summarized the procedural bars to review of proceedings under

§ 2255 as follows:

> In the case of a collateral challenge based on constitutional claims, two separate
> rules regarding claim preclusion based on a prior adjudication apply.  First, the
> so-called mandate rule bars re-litigation of issues already decided on direct
> appeal.  Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States
> v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993).  The mandate rule prevents
> re-litigation in the district court not only of matters expressly decided by the
> appellate court, but also precludes re-litigation of issues impliedly resolved by the
> appellate court's mandate.  See United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir.
> 2001).  To determine whether an issue may be reconsidered on remand, a district
> court "should look to both the specific dictates of the remand order as well as the
> broader spirit of the mandate."  Id. (internal quotation marks omitted). . . .
>
> In the context of Section 2255 proceedings involving claims of ineffective
> assistance of counsel, we have applied the mandate rule to bar claims raised and
> resolved on direct appeal.  See e.g., United States v. Pitcher, 559 F.3d 120, 124
> (2d Cir. 2009); Riascos-Prado v. United States, 66 F.3d 30, 33 (2d Cir. 1995);
> Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993) (superseded by statute on
> other grounds); Schwamborn v. United States, 492 F. Supp. 2d 155, 160-62
> (E.D.N.Y. 2007).  We have also applied the mandate rule to bar ineffective

assistance claims in a Section 2255 proceeding when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate.  See Pitcher, 559 F.3d at 124 (rejecting petitioner's Section 2255 ineffective assistance claims because they were "premised on the same facts and rest on the same legal ground" as the argument made on direct appeal).

A second rule that applies in the Section 2255 context prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice.  See Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."); Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992) ("[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice.").

Yick Man Mui, 614 F.3d at 53-54.[3]

To satisfy the "cause" requirement, the petitioner must show circumstances "external to the petitioner, something that cannot fairly be attributed to him."  Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original).  Attorney error or ignorance does not amount to "cause" for a procedural default unless the error rises to the level of constitutional ineffectiveness.  See id. at 752-54.  The resulting "prejudice" must create an "actual and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

An exception to the procedural default rule exists for claims of ineffective assistance of counsel.  In Massaro v. United States, 538 U.S. 500 (2003), the Supreme Court held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255,

---

[3]  Additionally, a petitioner may be relieved of the procedural bar by showing "that he is 'actually innocent.'"  Bousley v. United States, 523 U.S. 614, 622 (1998) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)); accord Cox v. United States, 783 F.3d 145, 150 (2d Cir. 2015) (per curiam).

whether or not the petitioner could have raised the claim on direct appeal." Id. at 504.

C. Waiver

Case law makes clear that a waiver of the right to bring a motion to vacate under section 2255 is enforceable as long as the petitioner's waiver is knowing and voluntary. See, e.g., Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir. 2002), cert. denied, 537 U.S. 1146 (2003); Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001) (per curiam); Rosa v. United States, 170 F. Supp. 2d 388, 397 (S.D.N.Y. 2001). This principle is a corollary of the well-settled principle that a knowing and voluntary waiver of the right to appeal is enforceable. See, e.g., United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999) (per curiam); United States v. Djelevic, 161 F.3d 104, 106-07 (2d Cir. 1998) (per curiam); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.), cert. denied, 509 U.S. 931 (1993).

There is an exception to the bar imposed by a defendant's waiver of the right to bring a section 2255 petition. Such a waiver is not enforceable where there is "an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick, 308 F.3d at 195 (citations omitted); cf. Monzon, 359 F.3d at 118-19 ("The appeal waiver would be unenforceable if . . . the waiver was the result of ineffective assistance of counsel . . . ."); accord United States v. Laskaris, 2018 WL 4863591, at *2 (E.D.N.Y. Sept. 28, 2018) ("With respect to claims of ineffective assistance of counsel that are limited to post-plea events (e.g., sentencing), however, the waiver remains enforceable.") (citation, internal quotation marks, and bracketing omitted); Castellanos v. United States, 2008 WL 4548916, at *5 (S.D.N.Y. Oct. 8, 2008) ("It is well established that 'claims of ineffective assistance of counsel can survive § 2255 waivers, but

only when the claim relates to the negotiation and entry of a plea agreement.'") (quoting United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007), and citing Hernandez, 242 F.3d at 114) (alterations omitted); Riggi v. United States, 2007 WL 1933934, at *5 (S.D.N.Y. July 5, 2007) ("[W]here there is a claim of ineffective assistance of counsel that calls into question the legitimacy of the waiver itself, the waiver will not foreclose a section 2255 petition.") (citing United States v. Ballesteros, 2007 WL 778051, at *3 (S.D.N.Y. Mar. 16, 2007)).

     D.   Ineffective Assistance of Counsel Claims

To prove ineffective assistance of counsel, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); accord United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); see also Massaro, 538 U.S. at 505 ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

In evaluating the first prong — whether counsel's performance fell below an objective standard of reasonableness — "'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'"  Bell v. Cone, 535 U.S. 685, 698 (2002) (alteration in original) (quoting Strickland, 466 U.S. at 689) (additional quotation marks and citation omitted); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence).  With respect to the second prong — the prejudice requirement — the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; accord Lynn v.

Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006).  The Second Circuit generally "requires some

objective evidence other than defendant's assertions to establish prejudice."  Pham, 317 F.3d at

182 (citing United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)).  Unlike

the reasonableness prong, the prejudice determination "may be made with the benefit of

hindsight."  Morgan v. United States, 2009 WL 1172849, at *5 (E.D.N.Y. May 1, 2009) (citing

Lockhart v. Fretwell, 506 U.S. 364, 371-73 (1993)).

III.  DISCUSSION

     Because Tsastsin is a pro se litigant, we hold his submissions "to less stringent standards

than formal pleadings drafted by lawyers."  Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam)

(citations and internal quotation marks omitted); accord Nelson v. Brown, 2009 WL 6340020, at

*12 n.6 (S.D.N.Y. July 1, 2009); Scales v. N.Y. State Div. of Parole, 396 F. Supp. 2d 423, 428

(S.D.N.Y. 2005).  Additionally, we construe Tsastsin's submissions "liberally . . . 'to raise the

strongest arguments that they suggest.'"  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.

1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); accord Brownell v. Krom,

446 F.3d 305, 310 (2d Cir. 2006); Minaya v. United States, 190 F. Supp. 3d 340, 341 (S.D.N.Y.

2016).

    A.  The Parties' Arguments

     Tsastsin's overarching complaint is that his counsel rendered ineffective assistance

throughout his plea negotiation and sentencing.  First, as to the attorneys who represented him at

his plea proceeding, Jeremy Schneider, David Stern, and Lucos Anderson ("plea counsel"),

Tsastsin argues (1) that they rendered ineffective assistance because they provided him with

"wrong information" as to prior custody credit for the time he was detained in Estonia.  See Pet'r Mem. at 12-14.  Second, as to the attorneys who represented him at sentencing, Arkady Bukh and Charles Kaser ("sentencing counsel"), Tsastsin argues that they rendered ineffective assistance because they (2) failed to object to the Government's representation as to the proper Guidelines offense level in light of the fact that the parties had purportedly agreed that the Guidelines in effect as of November 1, 2015, should apply to Tsastsin's Guidelines calculation, id. at 17-18; (3) failed to object to the Government's and the court's alleged miscalculation of the Guidelines offense level, id. at 18-19; failed to protest the Government's alleged breach of the plea agreement concerning (4) statements made regarding Tsastsin's leadership role in the offense, id. at 19-21, (5) the total loss amount, id. at 21-23, and (6) the forfeiture amount, id. at 23-24; (7) failed to request application of U.S.S.G. § 5G1.3(b), id. at 24-29; (8) failed to correct errors in the PSR, id. at 29-32; and (9) failed to file a timely notice of appeal, id. at 32-33.

The Government argues that Tsastsin's claims are time-barred under section 2255(f). See Resp't Opp. at 13-15.  The Government also argues that some claims (Claims One through Five, Seven, and Eight) should be dismissed for lack of jurisdiction because they can only properly be brought under 28 U.S.C. § 2241, and thus cannot be brought in this district, Resp't Opp. at 12-13, and that the claims fail for other reasons, id. at 15-20.

B.  Whether the Petition is Properly Construed as Filed Pursuant to 28 U.S.C. § 2255

Section 2241 is the "general habeas corpus statute," I.N.S. v. St. Cyr, 533 U.S. 289, 298 (2001), granting federal courts the power to issue writs of habeas corpus, see 28 U.S.C. § 2241(a).  The statute allows for issuance of a writ of habeas corpus for any prisoner who is in custody in violation of the laws of the United States.  Id. § 2241(c)(3).  As the Second Circuit has noted, a section 2241 motion properly challenges matters such as "the administration of

16

parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."  Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) (citation, emphasis, and internal quotation marks omitted); accord Adams v. United States, 372 F.3d 132, 134 (2d Cir. 2004) (discussing the difference between the two different "mechanisms for a federal prisoner to challenge his detention" under sections 2241 and 2255).

   While, as we discuss below, a section 2255 has a one-year limitations period, "no statute of limitations applies to the filing of § 2241 petitions."  Hoffler v. Bezio, 831 F. Supp. 2d 570, 576 n.5 (N.D.N.Y. 2011) (citing cases), aff'd, 726 F.3d 144 (2d Cir. 2013); accord Reyes v. United States, 2009 WL 274482, at *6 n.55 (S.D.N.Y. Feb. 3, 2009) (noting that "Section 2241 itself does not contain a statute of limitations provision," and that "[w]hether AEDPA's one-year limitations period will bar a subsequently filed section 2241 petition is an open question").

   Here, we find that the claims in the petition were properly brought under section 2255. We reach this conclusion because "[section] 2255 is generally the proper vehicle for a federal prisoner's challenge" to his sentence, as that statute "encompasses claims that 'the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence . . . is otherwise subject to collateral attack.'"  Jiminian v. Nash, 245 F.3d 144, 146-47 (2d Cir. 2001) (quoting 28 U.S.C. § 2255); accord Bottone v. United States, 350 F.3d 59, 63 (2d Cir. 2003); Mateo v. United States, 903 F. Supp. 2d 282, 284 (S.D.N.Y. 2012); Paredes-Cisnero v. United States, 869 F. Supp. 2d 402, 404 (S.D.N.Y. 2012).  The Second Circuit has stated that ineffective assistance of counsel claims are "more appropriately raised on a motion brought under 28 U.S.C. § 2255."  United States v. Hertular, 562 F.3d 433, 451 (2d Cir. 2009) (citing Massaro, 538 U.S. at 504-05, and United States v. Iodice, 525 F.3d 179, 186 (2d Cir. 2008)); accord Yalincak v. United States, 2010 WL 2232477, at *3 (D. Conn. May 28, 2010).

Here, all nine claims comprising Tsastsin's petition allege ineffective assistance of counsel at the plea and sentencing stages of his case.  See Pet'r Mem. at 12-33.  Accordingly, Tsastsin's petition is properly reviewed as brought under 28 U.S.C. § 2255.  See Adams, 372 F.3d at 135 ("[W]e have ruled that federal prisoners generally must invoke § 2255 instead of § 2241 to challenge a sentence as violating the U.S. Constitution or laws.") (citing cases).[4]

C.  Analysis

The statute of limitation period for filing a motion under 28 U.S.C. § 2255 is one year. That limitation period runs from the latest of

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).[5]

---

[4]  Although we do not construe any claims in Tsastsin's petition as seeking relief under section 2241, our ruling here does not prevent Tsastin from filing any challenge as to BOP's computation of his sentence, as long it is filed in the correct district.  See, e.g., United States v. Smalling, 644 F. App'x 3, 5 (2d Cir. 2016) (section 2241 petition "must be brought against the BOP in the district in which [petitioner] is incarcerated . . . .") (citing Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004)); Chambers v. United States, 106 F.3d 472, 474 (2d Cir. 1997) ("challenge to Bureau of Prisons' calculation of sentence under 18 U.S.C. § 3585 is properly raised in § 2241 petition") (citing United States v. Werber, 51 F.3d 342, 349 n.17 (2d Cir. 1995)).  Currently, Tsastsin is incarcerated in the Middle District of Pennsylvania.

[5]  While "[i]t is settled that the one-year period of limitation may be equitably tolled," Alvarez v. United States, 2019 WL 1428350, at *5 (S.D.N.Y. Mar. 29, 2019) (citing Holland v.

Here, the limitations period began to run from the date Tsastsin's judgment became final.
The judgment was entered on May 4, 2016, see Judgment, filed May 4, 2016 (Docket # 159 in
11 Cr. 878), and became final on May 18, 2016, fourteen days later, as Tsastsin did not appeal,
see Fed. R. App. P. (4)(b) (requiring appeal in criminal case to be filed within fourteen days of
judgment); Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam) ("[F]or
purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the
time for filing a direct appeal expires."); accord King v. United States, 2017 WL 1483337, at *10
(S.D.N.Y. Apr. 25, 2017). Thus, the one-year limitation period for filing a habeas petition under
section 2255 began to run on May 18, 2016, and expired on May 18, 2017. 28 U.S.C.
§ 2255(f)(1).

Tsastsin argues that the limitation period in his case began to run later, pursuant to
subsection (f)(2) or (f)(4). See Pet'r Mem. at 8; Pet'r Reply at 14-15. He claims that the
limitation period began to run no earlier than either December 14, 2017, the date BOP stated it
discovered it had erroneously applied foreign jail credit to Tsastsin's federal sentence, Pet'r
Mem. at 8, or June 27, 2018, the date of the BOP Appeal Decision regarding the applicability of
that foreign jail credit, Pet'r Reply at 15. Accordingly, we next discuss whether either of the two
subsections render his section 2255 petition timely.

First, subsection (f)(2) "is inapplicable because there is no allegation or evidence of any

---

Florida, 560 U.S. 631, 645 (2010), and Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)),
"[e]quitable tolling applies only in the rare and exceptional circumstance," Smith, 208 F.3d at 17
(citation and internal quotation marks omitted). A petitioner has the burden on the issue of
tolling. See, e.g., Beaty v. United States, 2012 WL 383942, at *2 (S.D.N.Y. Feb. 7, 2012)
(citation omitted). Here, Tsastsin has not argued that the limitation period should be equitably
tolled. In any event, he has not adduced any evidence "that some extraordinary circumstance
stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (citation and internal
quotation marks omitted).

governmental action that impeded [Tsastsin] from bringing his petition." United States v. Pearson, 2014 WL 12845369, at *2 (N.D.N.Y. June 12, 2014); see, e.g., Nitzer v. United States, 2014 WL 2882564, at *2 (W.D.N.Y. June 25, 2014) ("[Petitioner] does not contend that there was any 'governmental action' that was an 'impediment' to his ability to make the § 2255 motion.  And even under a liberal reading, his petition raises no suggestion that the government impeded his ability to file the petition in any way."); Valencia v. United States, 2007 WL 2111074, at *3 (S.D.N.Y. July 13, 2007) (Petitioner's claim not timely under subsection (f)(2) because she "does not allege that she was prevented from filing her petition by any governmental action, illegal or otherwise."); Borbon-Vasquez v. United States, 2003 WL 1948806, at *4 (S.D.N.Y. Apr. 23, 2003) (subsection (f)(2) inapplicable because petitioner "does not allege the existence of any government-caused 'impediment' to the filing of his § 2255 motion").  Indeed, all of Tsastsin's claims relate to the failures of his counsel, not the Government.  Insofar as Tsastsin argues that the BOP appeals process was an "'impediment to making a motion created by governmental action,'" Pet'r Reply at 15 (quoting 28 U.S.C. § 2255(f)(2)), we reject that argument because Tsastsin has not shown how any action by the government prior to the BOP appeals decision in any way "prevented" him from making his section 2255 motion.

Turning to section 2255(f)(4), that section "establishes the date on which the limitations period begins to run; that date is determined by when 'the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.'" Wims v. United States, 225 F.3d 186, 188 (2d Cir. 2000) (emphasis in original) (quoting 28 U.S.C. § 2255(f)(4)). Subsection (f)(4)

> is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run.  Rather, it resets the limitations period's

> beginning date, moving it from the time when the conviction became final, see
> § 2255(1), to the later date on which the particular claim accrued.  See Smith, 208
> F.3d at 15 (distinguishing tolling provisions from those that restart the limitations
> period).

Id. at 190; accord Superville v. United States, 771 F. App'x 28, 31 (2d Cir. 2019) (summary

order).  Importantly, this limitations period begins to run "regardless of whether petitioner

actually discovers the relevant facts at a later date."  Wims, 225 F.3d at 188; accord

Lopez-Garcia v. United States, 2015 WL 745743, at *2 (S.D.N.Y. Feb. 9, 2015); Brockway v.

Burge, 710 F. Supp. 2d 314, 323 (W.D.N.Y. 2010).  The "date on which the limitations clock

began to tick is a fact-specific issue," Wims, 225 F.3d at 190, and "[t]he Second Circuit has

instructed that a district court must ask whether 'a duly diligent person in petitioner's

circumstances' would have discovered the evidence," Brockway, 710 F. Supp. 2d at 323-24

(quoting Wims, 225 F.3d at 190).  The "petitioner bears the burden of persuading the court that

he exercised due diligence in discovering the factual predicate of his habeas claim."  Shabazz v.

Filion, 2006 WL 2792741, at *5 (N.D.N.Y. Sept. 26, 2006) (citation and internal quotation

marks omitted) (citing cases), aff'd, 402 F. App'x 629 (2d Cir. 2010); accord United States v.

Nuckols, 2009 WL 4684022, at *4 (D. Vt. Dec. 4, 2009).

       Thus, unless Tsastsin can show that the facts underlying the claims in this habeas petition

were not discovered or could not have been discovered before May 18, 2017, the petition will be

deemed untimely.  See, e.g., Garcia v. United States, 2005 WL 1948714, at *1 (S.D.N.Y. Aug.

12, 2005), aff'd, 268 F. App'x 20 (2d Cir. 2008).  As to all nine of Tsastsin's claims, we

conclude that the "facts" supporting claims in his petition Tsastsin's were all known to him —

or, if they were not known, could have been discovered with due diligence — before May 18,

2017, the one-year limitation period deadline.  We discuss the applicability of subsection (f)(4)

to each of Tsastsin's claims.  See United States v. Herbert, 2014 WL 3579806, at *3 (S.D.N.Y.

July 21, 2014) ("Courts assess the timeliness of a habeas petition on a 'claim-by-claim basis.'")

(citations omitted).

          1.  Claim One

In Claim One, Tsastsin argues that the attorneys who represented him at his plea

proceeding provided him with "wrong information" about the possibility of receiving foreign jail

credit.  Pet'r Mem. at 13-14; Pet'r Reply at 15.  He states that he only learned that his time spent

in custody in Estonia from November 8, 2011, to December 21, 2013, was not credited to his

federal sentence at a later date: either when the BOP corrected his sentence on December 14,

2017, Pet'r Mem. at 13-14, or on June 27, 2018, when BOP issued its Appeal Decision, Pet'r

Reply at 15.  Thus, according to Tsastsin, the section 2255 one-year limitation period should run

from one of those dates pursuant to 28 U.S.C. § 2255(f)(4).

We note that, to the extent Claim One intends to argue that BOP made an erroneous

calculation, Tsastsin has a remedy in a petition under 28 U.S.C. § 2241 filed in the correct

district.  But to the extent that he is arguing his attorneys were constitutionally ineffective in

advising him that Judge Kaplan would or would not take into account the time spent in Estonian

custody in rendering his sentence, subsection (f)(4) does nothing to render this claim timely.

This is because it was plain at the time of sentencing that Judge Kaplan was not considering the

time he spent in Estonian custody from November 8, 2011, to December 20, 2013.  See Email

from Lucos Anderson to Vladimir Tsastsin, dated July 6, 2015 (annexed as App. A to Pet'r

Mem.) ("July 6 Email"); Government's Sentencing Memorandum, filed Apr. 22, 2016 (Docket #

154 in 11 Cr. 878) ("Gov't Sentencing Mem.").  In the July 6 Email, the office of Tsastsin's

attorney, Jeremy Schneider, shared with Tsastsin an email from the Government, in which the

Government made clear that while it "takes no position on whether the Court [should] take[] into consideration [Tsastsin's] Estonian sentence in fashioning an appropriate sentence for the US conviction," it would also be asking the Court "to make clear on the record whether it has already taken the Estonian sentence into account, so that [it is] clear to BOP later on and no double credit is inadvertently given." July 6 Email. This was in response to Mr. Schneider's email to the Government positing that Tsastsin's time spent in custody in Estonia before he was extradited "should be credited towards any sentence he receives here." Id.

The Government was also clear in its position on whether Tsastsin should receive credit for his time spent in Estonian custody on the Estonian charges in its April 2016 sentencing memorandum. The memorandum stated that while Tsastsin had been "held in Estonian custody pursuant to the U.S. extradition request (as opposed to the Estonian charges)," that time would "not be credited to Tsastsin's Estonian money laundering sentence." Gov't Sentencing Mem. at 6. As a consequence, that period of time (from December 21, 2013 to October 31, 2014) could be credited to the federal sentence. Id. (citing 18 U.S.C. § 3585(b) and BOP Policy Directive 5880.28).

At sentencing on April 26, 2016, the Government repeated that if the Court were in any way to credit Tsastsin's time served in Estonian custody, that credit "should only apply to the period of time that he was held in Estonia based on the U.S. sentence," Sentencing Transcript at 12-13 — in other words, the time during which Tsastsin was held in Estonian custody pursuant to the provisional U.S. arrest warrant through the time of his extradition to the United States (i.e., December 21, 2013, through October 31, 2014). See Gov't Sentencing Mem. at 1-3; BOP Appeal Decision at 1. And at sentencing, Judge Kaplan made clear that the sentence he imposed, 87 months in aggregate, "made allowance for the relative severity of prison conditions

23

in Estonia than the U.S. with respect to that portion of the time the defendant has already served in Estonia <u>solely on account of the U.S. sentence</u>."  Sentencing Transcript at 18-19 (emphasis added).  It was thus clear at his sentencing that Judge Kaplan considered only the time Tsastsin spent in Estonian custody as a result of the U.S. warrant.

At sentencing, Judge Kaplan ensured Tsastsin's ability to speak and understand English. <u>See</u> Sentencing Transcript at 3-4.[6]  Accordingly, Tsastsin knew that he had not received any credit in connection with his time spent in Estonian custody pursuant to Estonian charges as of April 26, 2016.

In sum, to use the language of section 2255(f)(4), the "facts supporting [Tsastsin's claim] could have been discovered through the exercise of due diligence" on the date of sentencing. <u>See</u> <u>Wims</u>, 225 F.3d at 190 ("The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered" the facts underlying the claim in his habeas petition.); <u>see</u>, <u>e.g.</u>, <u>King</u>, 2017 WL 1483337, at *13 (concluding that "petitioner cannot rely on Section 2255(f)(4)" to overcome time bar where "[a]ny challenge to the effectiveness of the petitioner's defense counsel could have been raised at any time after the plea allocution"); <u>United States v. Deptula</u>, 2016 WL 7985815, at *6 (D. Vt. Oct. 13, 2016) ("the date of [petitioner's] guilty plea was the date on which her duty of diligent inquiry arose"

---

[6] Tsastsin "asks the Court to review his arguments in the light that his native language is Russian." Pet'r Mem. at 33.  While we construe his arguments liberally in light of his pro se status, we also note that in entering his guilty plea, Tsastsin made his allocution to the Court in English.  Plea Transcript at 14-15.  And at sentencing, Judge Kaplan explicitly asked Tsastsin whether he could understand what was being said to him in English, and Tsastsin replied (in English) that he could understand.  Sentencing Transcript at 3.  Further, Tsastsin confirmed that he read the PSR in English and that he understood it "[p]erfectly."  <u>Id.</u>  Tsastsin presents no evidence to support his assertion that "his level of proficiency is not enough to understand all the fine details of the plea bargaining discussions and the language of the plea agreement."  Pet'r Mem. at 33.

regarding the consequences of that guilty plea).

        2.  <u>Claims Two Through Nine</u>

We reach the same conclusion as to Tsastsin's ineffective assistance of sentencing counsel claims — Claims Two through Eight.  As to those claims, Tsastsin contends that his sentencing counsel failed to object to the Government's representation of the proper Guidelines offense level; the alleged miscalculation in the stipulated offense level; the Government's alleged breach of the plea agreement concerning statements made regarding the correct offense level, Tsastsin's leadership role in the offense, the total loss amount, and the forfeiture amount; and that counsel failed to request application of U.S.S.G. § 5G1.3(b) and correct errors in the PSR.  <u>See</u> Pet'r Mem. at 14-33.  Tsastsin argues that the facts underlying or supporting these claims could not have been discovered before December 14, 2017, the date BOP stated it discovered it had erroneously applied foreign jail credit in Estonia to Tsastsin's federal sentence, <u>id.</u> at 8, or June 27, 2018, the date of the BOP Appeal Decision regarding the applicability of that foreign jail credit, Pet'r Reply at 15.

We note that Tsastsin does nothing to show the facts relating to these claims either were not known or could not have been discovered with due diligence before the one-year limitation period expired.  Indeed, he points to no "facts" other than the BOP Appeal Decision regarding the Estonian foreign jail credit determination that could have re-started the limitations period under 28 U.S.C. § 2255(f).  But nothing in the BOP Appeal Decision provided additional facts relating to these ineffective assistance of counsel claims.

To the contrary, Tsastsin was either aware of the facts underlying his claims as to ineffective assistance of sentencing counsel or could have discovered such facts well before the one-year limitation period expired.  "[A] duly diligent person in petitioner's circumstances"

25

would have known or discovered, <u>Wims</u>, 225 F.3d at 190, the fact that the Government made

representations as to the proper Guidelines offense level, Tsastsin's leadership role in the

offense, the total loss amount, and the forfeiture amount, and that his counsel did not contest

those issues.  <u>See</u> Sentencing Transcript at 4-5, 7-8, 10, 14-15, 16, 22.  A "duly diligent person"

in Tsastsin's circumstances would also have realized that no request by his counsel had been

made regarding U.S.S.G. § 5G1.3(b) or to correct the alleged errors in the PSR.  Thus, the facts

underlying Tsastsin's ineffective assistance of sentencing counsel claims (Claims Two through

Eight) were or could have been known well within the one-year limitation period.  Those claims

are therefore time-barred.

      As to Tsastsin's claim regarding his attorneys' failure to file a timely notice of appeal

(Claim Nine), Pet'r Mem. at 32-33, a "duly diligent person" in Tsastsin's position would have

known or discovered within a year of his sentence the fact that no appeal was filed on his behalf.

It is thus not necessary to decide whether the Court should credit the statements of Tsastsin's

sentencing counsel, Arkady Bukh and Charles Kaser, who have submitted a sworn declaration

averring that after they made the determination that Tsastsin had no "non-frivolous grounds to

support [an] appeal," they communicated the decision to Tsastsin "well before the expiration of

the 14-day" period in which to file an appeal, and that Tsastsin "retract[ed] his prior order to file

a Notice of Appeal."  Declaration of Arkady Bukh and Charles Kaser, filed Feb. 11, 2019

(Docket # 9), ¶¶ 2, 7-8.  As one case has noted, "[a] duly diligent person in [Tsastsin's] shoes

would not have needed [over a year] to discover the alleged ineffectiveness of counsel, [as to]

whether his attorney had failed to file a direct appeal."  <u>Tineo v. United States</u>, 2002 WL

1997901, at *2 (S.D.N.Y. Aug. 29, 2002); <u>see</u> <u>also</u> <u>United States v. Davis</u>, 2015 WL 1097384, at

*7 (D. Vt. Mar. 11, 2015) ("At some point [petitioner] should have learned through the exercise

of due diligence that no direct appeal had been pursued on his behalf."); Gonzalez-Ramos v. United States, 2007 WL 1288634, at *10 (S.D.N.Y. May 2, 2007) ("the question of when Petitioner actually learned his appeal was not pending, or that a notice of appeal had not been filed, is immaterial," because "the pertinent question is whether a diligent person in Petitioner's circumstances would have discovered that no appeal had been filed . . . .").  Notably, Tsastsin provides no evidence as to how or when he followed up with his attorneys as to whether any appeal had been filed or the status of his appeal.  See Shabazz, 2006 WL 2792741, at *5 ("petitioner bears the burden of persuading the court that he exercised due diligence in discovering the factual predicate of his habeas claim").  Tsastsin states that he "ordered his counsel to file a notice of appeal and bring the case to the 2[nd] Circuit," but "Defense counsel ignored Petitioner's request."  Pet'r Mem. at 32.  But "[d]ue diligence then demanded that [petitioner] inquire into the status of his appeal, an inquiry that would have uncovered the fact that no appeal had been filed."  Delacruz v. United States, 2006 WL 2129335, at *3 (S.D.N.Y. July 31, 2006).

Perhaps even more critically, Tsastsin's submissions do not explain why he could only have discovered that no appeal had been filed on the exact date BOP corrected his sentence computation or when BOP issued its decision in response to the administrative appeal.  Put differently, there is no explanation as to how learning that BOP had re-computed Tsastsin's sentence as to the foreign jail credit is a newly discovered "fact" underlying his ineffective assistance of counsel claim as to the failure to file a direct appeal.

Tsastsin maintains that his claims are timely because "the BOP errors" — i.e., the BOP's corrective measure to re-compute Tsastsin's sentence after having discovered that foreign jail credit was mistakenly applied to the sentence — were what led him to file his habeas petition.

27

Pet'r Mem. at 8 ("The claims in this Petition are a consequence of these errors. . . . Petitioner didn't have any reason to submit this Petition before, because he had jail credit from the BOP and because he expected to be released on February 28, 2018."). Tsastsin thus asserts that his petition is timely under section 2255(f)(4) because he only learned that the BOP re-computed his sentence on June 27, 2018. See, e.g., Pet'r Reply at 14-15 ("Until this event occurred, Petitioner had no reason to seek [habeas] relief because the BOP had credited him time for his Estonian sentence. . . . Petitioner could not have filed this Motion until June 27, 2018, when his Central Office Administrative Remedy Appeal was denied.").

This argument is without merit because it incorrectly assumes that the "facts" supporting Tsastsin's habeas claims are those having to do with BOP issuing its administrative appeal decision. In fact, section 2255(f)(4) refers to the facts supporting the claim or claims presented underlying the actual habeas petition itself, not on the later consequences of those facts. See Rodriguez v. United States, 2008 WL 4663569, at *1 (N.D.N.Y. Oct. 20, 2008) ("Both the plain language . . . and judicial interpretation of [28 U.S.C. § 2255(f)(4)] indicate that the . . . statute of limitations will run from the date that the Petitioner could have diligently discovered the facts underlying his claim, not the date upon which the Petitioner could have discovered the legal salience of those facts.") (emphasis in original). Thus, whether Tsastsin's claims are timely under subsection (f)(4) has nothing to do with the date he learned that BOP re-computed his sentence with respect to any foreign jail credit. Instead, the timeliness of the claims turns on when a duly diligent petition in Tsastsin's circumstances could have discovered the facts underlying his substantive ineffective assistance of counsel claims that make up his habeas petition.

In sum, because Tsastsin's petition was filed after section 2255(f)'s one-year limitation

period expired, his claims are time-barred and the petition should be dismissed as untimely. Accordingly, we do not address the Government's remaining arguments. Tsastsin remains free to bring any claims challenging the computation of his sentence in a petition arising under 28 U.S.C. § 2241 filed in the correct district.

IV.   CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus (Docket # 1) should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan at 500 Pearl Street, New York, New York, 10007. Any request for an extension of time to file objections or responses must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  September 10, 2019
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy to:

Vladimir Tsastsin
ID No. 91040-054
Moshannon Valley Correctional Center
555 Geo Drive
Philipsburg, PA 16866

30